UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
RAMOOE, INC.,
         Plaintiff,

   -against-                             **MEMORANDUM AND ORDER**

                                         13 Civ. 01045 (SLT) (VMS)

CITY OF NEW YORK, et al.,

         Defendants.
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

Before the Court is the Parties' discovery dispute relating to certain documents Defendant City of New York (the "City") and Defendant New York City Department of Housing Preservation and Development ("HPD")[1] (collectively "Defendants") have deemed protected under the attorney-client privilege or the deliberative process privilege ("Disputed Documents"). See Joint Letter, ECF No. 44. Defendants have submitted the Disputed Documents to the Court for in camera review and determinations of privilege. The Court issues the following rulings regarding the Disputed Documents. The Court assumes for the purposes of this Memorandum and Order that the Parties are familiar with the facts and procedural history of the case.

    **I.**     **Attorney-Client Privilege**

Defendants assert the attorney-client privilege as its reason for withholding some of the Disputed Documents. This "is the oldest of the privileges for confidential communications

---

[1] Under New York law, HPD is not a suable entity, and any claim against it must be brought in the name of the City of New York. See Garanin v. New York City Hous. Pres. & Dev., No. 15 Civ. 3169 (AJN), 2016 WL 1690301, at *5 (S.D.N.Y. Mar. 30, 2016), aff'd, 673 F. App'x 122 (2d Cir. 2016); see Fed. R. Civ. P. 17(b)(2).

1

known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389-90 (1981) (internal citations omitted). "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Trammel v. United States, 445 U.S. 40, 51 (1980); see Fisher v. United States, 425 U.S. 391, 403 (1976) (the purpose of the privilege is "to encourage clients to make full disclosure to their attorneys").

A party invoking the attorney-client privilege must demonstrate that there was "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re Cty. of Erie, 473 F.3d 413, 418 (2d Cir. 2007); see United States v. Adlman, 68 F.3d 1495, 1500 (2d Cir. 1995) ("The party claiming the benefit of the attorney-client privilege has the burden of establishing all the essential elements.").

The privilege is narrowly defined by both scholars and the courts. See Univ. of Pa. v. E.E.O.C., 493 U.S. 182, 189 (1990). The privilege is not "given broad, unfettered latitude to every communication with a lawyer, but is to be narrowly construed to meet this narrowest of missions." NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 125-26 (N.D.N.Y. 2007) (citing Fisher v. United States, 425 U.S. 391, 403 (1976) ("However, since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose.")).

"In today's world, an attorney's acumen is sought at every turn, even average attorneys mix legal advice with business, economic, and political." NXIVM Corp., 241 F.R.D. at 125

2

(citations omitted). "When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged." In re County of Erie, 473 F.3d at 421-22. The privilege is "triggered only" by a request for legal advice, not business advice. In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984); see Elliott Assoc. L.P. v. Republic of Peru, 176 F.R.D. 93, 97 (S.D.N.Y. 1997) (finding that the communication is not cloaked if the lawyer is hired for business or personal advice); Fine v. Facet Aerospace Prod. Co., 133 F.R.D. 439, 444 (S.D.N.Y.1990) (privilege not extended to management advice). If the communication between attorney and client "is not designed to meet problems which can fairly be characterized as predominately legal, the privilege does not apply." Rattner v. Netburn, No. 88 Civ. 2080 (GLG), 1989 WL 223059, at *6 (June 20, 1989), aff'd, No. 88 Civ. 2080 (GLG), 1989 WL 231310 (S.D.N.Y. Aug. 23, 1989); see In re County Erie, 473 F.3d 413, 419-22 (2d Cir. 2007) (ruling that the predominant purpose of the advice is to solicit or gain legal advice); United States Postal Serv. v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994).

## II.  Deliberative Process Privilege

Defendants also assert the deliberative process privilege, a subcategory of the work product doctrine. See Tigue v. United States Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002). The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated." Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001); see, e.g., 5 U.S.C. § 552(b)(5) (incorporating the deliberative process privilege through its exemption from disclosure under the Freedom of

Information Act of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency"). In other words, the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (internal quotation marks & citations omitted). Recognizing correctly that "officials will not communicate candidly among themselves if each remark is a potential item of discovery," the deliberative process privilege helps "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." Klamath Water Users Protective Ass'n, 532 U.S. at 8-9 (internal quotation marks & citations omitted). It further serves to prevent the premature disclosure of proposed policies, and avoids "misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege applies to intra-agency and inter-agency communications. See, e.g., Tigue, 312 F.3d at 77; Allstate Ins. Co. v. Serio, No. 97 Civ. 0023 (SS) (THK), 1998 WL 477961, at *3 (S.D.N.Y. Aug. 13, 1998). "For a particular inter-agency or intra-agency document to be protected by the privilege, the agency must demonstrate that the document is both "predecisional" and "deliberative."" Allocco Recycling, Ltd. v. Doherty, 220 F.R.D. 407, 411-12 (S.D.N.Y. 2004); see, e.g., Tigue, 312 F.3d at 76; Grand Cent. P'ship, 166 F.3d at 482; Azon v. Long Island R.R., No. 00 Civ. 6031 (HB), 2001 WL 1658219, at *1 (S.D.N.Y. Dec. 26, 2001).

A document is "predecisional" when it is "'prepared in order to assist an agency decisionmaker in arriving at his decision.'" Hopkins v. United States Dep't of Hous. & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)).  This makes a distinction between "predecisional" documents prepared before a final agency decision, which are protected, and "postdecisional memoranda setting forth the reasons for an agency decision already made," which are not.  Grumman Aircraft Eng'g Corp., 421 U.S. at 184.

A document is "deliberative" if it is "actually . . . related to the process by which policies are formulated."  Hopkins, 929 F.2d at 84 (ellipsis in original) (internal quotation marks and citation omitted).  Therefore, the privilege does not protect "'a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment.'"  Grand Cent. P'ship, 166 F.3d at 482 (quoting Ethyl Corp. v. EPA, 25 F.3d 1241, 1248 (4th Cir. 1994)).  In making this determination, "courts look to whether the document '(i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency.'"  Azon, 2001 WL 1658219, at *2 (quoting Nat'l Cong. for Puerto Rican Rights v. City of New York, 194 F.R.D. 88, 92 (S.D.N.Y. 2000)).

Accordingly, the privilege does not extend to "purely factual, investigative matters."  EPA v. Mink, 410 U.S. 73, 89 (1973), superseded on other grounds by Pub. L. No. 93-502, 88 Stat. 1561 (1974); accord Hopkins, 929 F.2d at 85; Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988).  It does not protect "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and

5

severable from its context." Mink, 410 U.S. at 91. Factual materials tend not to be privileged unless they are "inextricably intertwined with policy-making processes." Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988). "Non-factual materials that express opinions or recommendations, on the other hand, are clearly protected." Trentadue v. Integrity Comm., 501 F.3d 1215, 1226-29 (10th Cir. 2007); see, e.g., NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) ("The cases . . . focus on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.") (citation & quotation omitted); Coastal States Gas, 617 F.2d at 866 ("The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.").

If circumstances where factual portions of a document are "severable without compromising the private remainder of the document[ ]," then the factual portions must be disclosed, even though the deliberative material remains protected. See Mink, 410 U.S. at 91; accord Providence Journal Co. v. United States Dep't of the Army, 981 F.2d 552, 559 (1st Cir. 1992).

Defendants argue that factual background information should be protected because it outlines pros and cons which are necessarily affect a person's decision-making process. "However, information is not protected simply because disclosure would reveal some minor or obvious detail of an agency's decisionmaking process," Trentadue, 501 F.3d at 1228, and it ignores the possibility that some of the factual material may have no persuasive value or actual bearing on the decision-making process.

The Court finds that none of the Disputed Documents contains factual information should be protected under the deliberative process privilege.

## III. PRIVILEGE LOG

Rule 26 of the Federal Rules of Civil Procedure provides that when a party withholds documents on the grounds of privilege, it must both "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

The requirements of the privilege log were described by the Honorable Henry B. Pitman, United States Magistrate Judge, in Auto. Club of New York, Inc. v. Port Auth. of New York & New Jersey, 297 F.R.D. 55, 58 (S.D.N.Y. 2013):

> Local Civil Rule 26.2 [ ] authorizes the use of a categorical privilege log and provides that "when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category." Local Civil Rule 26.2(c). Although the Local Civil Rule does not define what information must be included in a categorical privilege log, Fed. R. Civ. P. 26 applies with the same force to a categorical log as it does to a traditional log that lists each document individually. Accordingly, a categorical privilege log is adequate if it provides information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege. See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 274 F.R.D. 106, 112 (S.D.N.Y. 2011).
> . . .
> Therefore, the adequacy of a privilege log—whether categorical or document-by-document—must be measured with respect to the privilege asserted. As applied to the deliberative process privilege, this requires that the log contain sufficient information such that the reviewing party can make an intelligent determination as to whether the withheld documents are "predecisional" and "deliberative." See S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 416 (S.D.N.Y. 2009) (Scheindlin, D.J.). Thus, a log of documents withheld on the basis of the deliberative process privilege should provide various pieces of information, including, but not limited to, a description of the decision to which the documents relate, the date of the decision, the subject-matter of the documents in issue, the nature of the opinions and analyses offered, the date that documents were

generated, the roles of the agency employees who authored or received the withheld documents and the number of employees among whom the documents were circulated. These sort of details, while not exhaustive, would provide the receiving party with sufficient facts to assess whether the documents were "related to the process by which policies are formulated." Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005).

We turn now to the documents disputed in the present case.

## IV. DISPUTED DOCUMENTS

At the outset, the Court finds that Defendant did not provide an adequate privilege log for the Disputed Documents for which it claims the deliberative process privilege. Having reviewed the Disputed Documents in camera, absent, inter alia, any descriptions of the decisions to which the documents relate and the dates of those decisions, the Court finds it difficult to parse whether some of these documents are "deliberative" in truth, or just factual. The Court's decision is thus based solely on the documents themselves.

To the extent the Court believes some material may be redacted, the Court has highlighted the portions to be redacted on the documents filed ex parte for Defendant's eyes only and marked as Attachment A (1-5) with this Memorandum & Order. Plaintiff is to redact the material as indicated in the Attachment A (1-5) and provide the redacted copies by 5 P.M. today. To the extent whole, unredacted documents must be produced, Defendants must provide the copies to Plaintiff on the same timeline. The Court has not considered whether Defendants may designate some or all of the documents as confidential, although the Court notes that some of the documents contain material from nonparties that is unlikely to be properly designated as confidential, such as the press contacts.

### a. Pre-2006 Documents

Although the documents that Defendant claims were created between 2003-2006 are outside the scope of Plaintiff's discovery request, the Court has reviewed them in camera and

8

made the following privilege determinations. As to all of these documents, the Court assumes that in the event Plaintiff amends the scope of its document demand to cover pre-2006 documents, it would be entitled production of the following items to the extent that they are not identified as privileged herein.

The Court grants Plaintiff's request in part as to Document A[2]: "Draft memorandum of Dan Doctoroff," and Defendants must produce this file to Plaintiff as redacted by the Court. Just because this document is labeled as a "draft" does not make it privileged. To the extent that this document consists mainly of compiled factual material, it is discoverable. See Mink, 410 U.S. at 91. As the Court believes that the factual portions are "severable without compromising the private remainder of the document[ ]," they must be disclosed, even though the deliberative process material remains protected. See Mink, 410 U.S. at 91. Thus, the Court has redacted the portions that it deems to be "opinions or recommendations," and the remainder of this document must be produced.

The Court denies Plaintiff's request as to Document B: "Departmental Memorandum to Rafael Cestero and Holly Leicht from John Gearrity"[3] as it is protected under the deliberative process privilege. This documents outlines several scenarios for consideration by Rafael Cestero as well as cost estimates. Although it contains facts, the Court does not believe they are severable without compromising the privileged remainder of the document. See Mink, 410 U.S.

---

[2] The pre-2006 documents were neither Bates stamped nor given document numbers in Defendants' privilege log. In an effort to avoid confusion, the Court has labeled these pre-2006 documents herein as well as on the marked-up copies of the Disputed Documents that it will return to Defendants herewith for redaction and production.

[3] This document contains an attachment, the April 7, 2005 Departmental Memorandum from Daisy Lopez and Amy Thogmartin, which is also privileged for the same reasons.

at 91. This document appears to be the type of advisory opinion and recommendation that the deliberative process was meant to protect. See Sears, Roebuck & Co., 421 U.S. at 150.

The Court grants Plaintiff's request as to Document C: "Undated handwritten notes," and Defendants must produce this document to Plaintiff. This is the type of document that a detailed privilege log should have described. As it is not dated, of unknown authorship, and not plainly deliberative in nature, it must be produced.

The Court grants Plaintiff's request in part as to Document D (emails between Joseph Rosenberg and John Warren; and Joseph Rosenberg, John Indiviglio and Walter Roberts from November 2003), and Defendants must produce these documents to Plaintiff as redacted by the Court. To the extent that these emails contains mostly factual information, they are discoverable. See Mink, 410 U.S. at 91. As the Court believes that the factual portions are "severable without compromising the private remainder of the document[ ]," Mink, 410 U.S. at 91, they must be disclosed. Thus, the Court has redacted the portions that it deems to be protected based on the Deliberative Process privilege and the remainder of this document must be produced.

The Court grants Plaintiff's request in part as to Document E: "Memorandum Draft from Hardy Adasko and Meenakshi Varandani to Josh Sirefman," and Defendants must produce this document to Plaintiff as redacted by the Court. Again, simply because this document is labeled as a "draft" does not make it privileged. This memorandum includes compiled factual material; to the extent that it contains non-factual materials that express opinions or recommendations, it has been redacted by the Court. See Trentadue, 501 F.3d at 1226-29. As the Court believes that the factual portions are severable without compromising the private remainder of the document, they must be disclosed. See Mink, 410 U.S. at 91.

The Court denies Plaintiff's request as to Document F: "Information regarding three development scenarios for the Broadway triangle" as it is protected under the deliberative process privilege. This document outlines three scenarios for consideration by Josh Sirefman as well as cost estimates. This document appears to be the type of advisory opinion and recommendation that the deliberative process was meant to protect. See Sears, Roebuck & Co., 421 U.S. at 150.

### b. Post-2006 Documents

These Disputed Documents unquestionably fall within the scope of Plaintiff's discovery request and must be provided subject to privilege limitations as follows:

### i. Items 1-4

It appears that the documents numbered 1-4 in Defendant's privilege log were compiled in preparation for a meeting between HPD and its legal representatives, the Law Department. Defendants claim both the attorney-client and deliberative process privileges here.

The Court finds that item 1 (Eric Enderlin's handwritten notes) is protected under the attorney-client privilege as it appears to be the minutes of the meeting with the Law Department wherein they discussed litigation strategies. The notes include legal analysis relating to litigation. See Scanlon v. Bricklayers & Allied Craftworkers, Local No. 3, 242 F.R.D. 238, 245 (W.D.N.Y. 2007) (courts have held that documents described as minutes of meetings with counsel present to provide legal advice would be likely to contain confidential communications, and as such are not available to discovery. In the end, the question is: does the document in question reveal, directly or indirectly, the substance of a confidential attorney-client communication. (Internal citations & quotations omitted)). Based on the Court's in camera

review, it finds that Eric Enderlin's handwritten notes contain information within the scope of the attorney-client privilege and thus should be redacted.

The Court finds that items 2 (site summary and map) & 3 (Eric Enderlin's handwritten notes) are protected under the Deliberative Process privilege.[4] The site map in particular appears to be a "draft document" which by its nature is deliberative and predecisional. See Auto. Club of New York, Inc., 297 F.R.D. at 58-59. The site summary that follows contains potential development options which this Court finds are part of the "process by which governmental decisions and policies are formulated." Grand Cent. P'ship, 166 F.3d at 482. As a result, they have been redacted by the Court accordingly. Eric Enderlin's handwritten notes are also privileged as they appear to "reflect the personal opinions of the writer rather than the policy of the agency." Id.

The memorandum numbered item 4 is protected under the attorney-client privilege as it is a communication between the Deputy General Counsel of HPD and the Commissioner of HPD about an ongoing litigation. See Ambac Assur. Corp. v. Countrywide Home Loans, Inc., 27 N.Y. 3d 616, 624, 57 N.E. 3d 30, 35 (N.Y. 2016) (a communication between an attorney and a client is privileged when it is for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship, is predominantly of a legal character, was confidential and the privilege was not waived). The Court finds, based on its in camera review, that item 4 meets the aforementioned criteria.

---

[4] The Court questions whether these documents were exchanged in the litigation against the City. If so, they are not privileged and must be produced.

### ii. Items 5-26/D_E0000158-D_E0000201

Defendants revised this production and reproduced the same documents with fewer redactions and with some additional documents on April 6, 2017. The Court has compared the two productions in camera and has found that they are identical but for the redactions and additional documents. For the purposes of this Memorandum & Order, the Court will review the more recent April 6, 2017 production bearing bates stamps D_E0000202- D_E0000241.

### iii. D_E0000202-D_E0000206

These documents are not in the privilege log but to the extent they are duplicative of items 5-26 in the privilege log, they will be analyzed under the parallel privileges asserted therein. Thus, Defendants assert the deliberative process privilege for these emails between Rabbi Niederman and HPD employees regarding the Williamsburg Cross Subsidy. Rabbi Niederman, who is the President of the United Jewish Org of Williamsburg, appears to be a site developer.[5] It is possible that conversations with Rabbi Niederman could be part of a deliberative process conversation if they had been in-house between or among co-developers, but Defendants' privilege log is devoid of any explanation as to how an outsider, even the site developer, was part of a deliberative process conversation. Defendants, having failed to offer any explanation as to how emails between HPD and a site developer would be covered by the deliberative process privilege, have not met their burden as to the privilege and must produce these documents.

---

[5] The Court makes this determination solely on its review of the Disputed Documents in camera and not based on information or explanation provided by Defendants.

### iv. D_E0000207-D_E0000228[6]

These documents for which Defendants claim the attorney-client and the deliberative process privilege all involve press inquiries. Having reviewed each of the emails, the Court finds that none of these emails is privileged and none meets the elements set forth in In re Cty. of Erie, 473 F.3d at 418. They do not appear to be communications between an attorney and a client; or to be for the purpose of obtaining legal advice; and it is questionable that any were intended to be confidential. For example, several of the emails are press inquiries from a reporter for WNYC as to the cost of the Broadway Triangle project for a story about Vito Lopez. A reporter's inquiry is outside of body communications that the attorney-client privilege is meant to cover and is thus not protected.

Further, they are not covered by the deliberative process privilege as they are neither predecisional nor deliberative. See Allocco Recycling, Ltd., 220 F.R.D. at 411-12.

### v. D_E0000229- D_E0000241

These documents were not part of the earlier production for which there is a privilege log. Thus, it is not clear which privilege, if any, Defendants are claiming here. Nevertheless, the Court finds that these letters from HPD to Scott Short, the Deputy Housing Director of the Ridgewood Bushwick Senior Citizens Council, and Rabbi Niederman, and the emails that follow, are not predecisional or deliberative. See id. On the contrary, they are HPD's decisions authorizing Mr. Short and Rabbi Niederman to apply for certain funding assistance to develop City-owned property. They are not covered under the attorney-client privilege as they are not

---

[6] There are portions of these documents that the parties do not appear to dispute and to the extent that there is not dispute, the Court will not go through them herein.

between an attorney and client. Furthermore, because a New York State employee is copied on all of these letters, they were not meant to be privileged.

V. **Conclusion**

In light of the foregoing, Defendants must produce the documents above as redacted by the Court. As the Parties have a conference with the Court on November 3, 2017, Defendants should endeavor to make their production on or before the 5 P.M. on November 2, 2017, so that any issues can be discussed with the Court on November 3, 2017.

Dated: Brooklyn, New York
November 2, 2017

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge