Israel Goldberg
Steven A. Weg
GOLDBERG WEG & MARKUS PLLC
122 West 27th Street, 11th Floor
New York, New York 10001
(212) 697-3250

Domenic M. Recchia, Jr.
LAW OFFICE OF DOMENIC M. RECCHIA, JR.
172 Gravesend Neck Road
Brooklyn, New York 11223
(718) 336-5550
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAMOOE, INC.,<br><br>           Plaintiff,<br><br> -against-<br><br>THE CITY OF NEW YORK, a Municipal Corporation of the State of New York, and the NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, an agency and governmental subdivision of the City of New York,<br><br>           Defendant. | Docket No.: 13-cv-01045 NGG-VMS |

## **DECLARATION OF CHAIM OSTREICHER**

Chaim Ostreicher declares:

1. I am president of Ramooe, Inc. ("Ramooe"). I make this declaration based upon my own personal knowledge and familiarity with the facts and circumstances set forth herein.

2. Plaintiff Ramooe acquired the real property known as 43 Bartlett Street, Brooklyn, New York 11206 (hereinafter the "Property") by deed dated January 15, 1997. A copy of the deed is annexed hereto as **Exhibit A**.

3. In 1998, after issuance of a permit by the NYC Department of Buildings to Plaintiff (annexed hereto as **Exhibit B**), Plaintiff poured a foundation for anticipated construction at the Property.

4. Just a few months after NYC granted a building permit to Plaintiff, NYC commenced a proceeding in the Supreme Court of the State of New York, County of Kings, to take the Property from Ramooe (referred to as the "Acquisition Proceeding" in Plaintiff's Memorandum of Law).

5. Ramooe learned well after the conclusion of the Acquisition Proceeding that NYC had purported to serve documents on Ramooe at "524" Bedford Avenue, Brooklyn, New York. Ramooe has never had an address at 524 Bedford Avenue but did have an address of "527" Bedford Avenue, Brooklyn, New York.

6. 527 Bedford Avenue, Brooklyn, New York was a residential building. Plaintiff never received any other notice of the Acquisition Proceeding and Plaintiff did not have actual notice of the proceeding to timely appear and oppose it.

7. Plaintiff commenced this action in 2013 alleging that Ramooe's rights were violation by the Defendants. *See*, Complaint [Doc. 1].

8. Later that year, in December 2013, the parties settled this action. The settlement agreement provided in pertinent part that Plaintiff would sign a quitclaim deed for the Property in exchange for compensation of $400,000, a woefully low number that was strenuously negotiated.

9. The reason why Ramooe ultimately agreed to such a low number was because it was well known that two local organizations with strong ties to the local community, Ridgewood Bushwick Senior Citizens Council ("RB") and United Jewish Organizations of Williamsburg ("UJO"), had been chosen to develop the Property (and a few neighboring properties). UJO was (and still is) run by Rabbi David Niederman, a local leader in the Williamsburg Satmar Hasidic community to which my family belongs. RB is also an influential organization that was started by Vito Lopez, a former assemblyman and former chairman of the Brooklyn Democratic Party.

10. Members of my family discussed often that we were settling for less than the value of the Property because of UJO and RB's involvement. We determined it was in our best interest to put our community first to keep the peace with the two local community organizations.

11. In addition, Ramooe was told that various legal challenges, including an injunction against the City in a lawsuit was close to being resolved.

12. The Defendants unquestionably knew from the back and forth and negotiations, as well as their general understanding of the political and communal landscape in South Brooklyn, that these factors (especially UJO's involvement) was important to Ramooe's agreement to settle.

13. My late father Eugene Ostreicher, the former president of Ramooe, attended settlement meetings and I attended at least one. The Defendants were cognizant of our appearance to be that of Hasidic Jews and Defendants knew that Plaintiff's address on Bedford Avenue is in Williamsburg in an area in which Hasidic Jews reside.

14. We were also sure to reinforce to Defendants' representatives that our interests were aligned with those of UJO.

15. We (which includes Ramooe) did not know at that time that RB and UJO had lost their funding from New York State. We also did not know that HPD had discussed revoking site

control from UJO and RB, which it subsequently did. The Defendants hid these facts from Ramooe and Ramooe had no independent way of learning these facts.

16. Had Ramooe known the facts discussed above at the time of the settlement then Ramooe never would have agreed to settle for $400,000, a woefully low price. The Property is worth significantly (millions) more. In addition, the ability to build residential housing for our family nearby to other members of our family in Williamsburg makes the Property even more valuable to our family.

17. It is requested that the Court vacate the settlement agreement that the parties signed so that this case can be litigated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 20, 2019

_____
Chaim Ostreicher