UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAMOOE, INC.,<br><br>                              Plaintiff,<br><br>       -against-<br><br>THE CITY OF NEW YORK, a Municipal Corporation of the State of New York, and the NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, an agency and governmental subdivision of the City of New York,<br><br>                              Defendant. | Docket No.: 13-cv-01045 NGG-VMS |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION TO SET ASIDE SETTLEMENT AGREEMENT</u>**

Israel Goldberg
Steven A. Weg
GOLDBERG WEG & MARKUS PLLC
122 West 27th Street, 11th Floor
New York, New York 10001
(212) 697-3250

Domenic M. Recchia, Jr.
LAW OFFICE OF DOMENIC M. RECCHIA, JR.
172 Gravesend Neck Road
Brooklyn, New York 11223
(718) 336-5550
*Attorneys for Plaintiff*

**<u>SERVED ON MAY 31, 2019</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ...................................................................................................................................2

    A. Defendants Present No Competent Testimony As To The Attendees and
       Discussions at the April 14, 2013 Settlement Meeting ..................................................2

        1. Holly Gestenfeld Admittedly Did Not Attende the April 14th Meeting .........2

        2. Fred Kolikoff's Declaration Lacks Credibility ...............................................4

        3. Jack Hammer's Lack of Recollection is Insufficient ......................................5

        4. Defendants Fail to Rebut that Defendants Knew That RB and UJO
           Were Significant Factors ..................................................................................5

    B. Plaintiff Has Not Changed Its Theory ............................................................................6

    C. The Recent Award to Developers Has No Bearing On This Dispute ............................8

CONCLUSION ................................................................................................................................9

Plaintiff Ramooe, Inc. ("Plaintiff" or "Ramooe") respectfully submits this Memorandum of Law in further support of its motion to vacate the settlement agreement between Plaintiff and defendants The City of New York and New York City Department of Housing Preservation and Development [Doc. 18].

## PRELIMINARY STATEMENT

At first glance, this Court may have considered that Defendants' arguments, when pieced together, actually have a coherent thesis. Unfortunately, this is not true. Defendants preferred to submit declarations that sound good rather than submit arguments that are actually supported by fact. Indeed, it is obvious that Defendants did not bother reading the transcripts or emails they attach to their own opposition papers prior to crafting their arguments. Had Defendants spent the requisite time reading their own exhibits, Defendants would have noticed that the "sound bites" they submit to this Court are confuted by Defendants' own submissions.

Contrary to Defendants' argument, Plaintiff has not spent years formulating a theory to vacate the settlement. Plaintiff's argument has remained constant since day one; the only thing that has changed is that Plaintiff's argument grew stronger and more targeted once Defendants disclosed documents and information that Defendants had been keeping close to the vest. The evidence, as supported by the deposition of Jack Hammer, supports that Defendants knew, at the time they were negotiating with Plaintiff, that: (i) Ridgewood Bushwick Senior Citizens Council ("RB") and the United Jewish Organizations of Williamsburg ("UJO") lost their funding from the State and City; and (b) that UJO and RB lost or were imminently going to lose site control over Plaintiff's Property.[1] Notwithstanding Defendants knowing that this information was crucial to Plaintiff's decision to settle instead of retaining the Property for themselves, Defendant HPD did

---

[1] The Property was defined in Plaintiff's opening papers as 43 Bartlett Street, Brooklyn, New York and retains such definition.

not disclose any of that to Plaintiff. While Defendants attempt to argue that the same was never raised at the settlement meetings with Plaintiff, this Court will see, in short order below, that there is no witness – not Holly Gerstenfeld., not Fred Kolikoff, and not Jack Hammer – that has any useful knowledge or memory of the settlement meeting to competently testify on such issue. Notably, when directed by Magistrate Judge Vera Scanlon to produce a party with knowledge of the facts for a deposition, Defendants did not offer Fred Kolikoff or mention that Mr. Kolikoff has knowledge of the facts at issue. Now, left with no person to oppose Plaintiff's motion, Defendants reached in and discovered a new fact witness, Fred Kolikoff, who was pulled out of retirement for this motion. A review of statements made by Mr. Kolikoff before Magistrate Judge Scanlon proves, though, that Mr. Kolikoff's Declaration is not probative of the issues at bar.

Left only with the unrefuted testimony of Chaim Ostreicher, this Court should find that such information was critical to Plaintiff, that Defendants knew such information was critical, and that the Defendants purposely did not disclose such information to Plaintiff.

## ARGUMENT

### A. Defendants Present No Competent Testimony As To The Attendees and Discussions at the April 15, 2013 Settlement Meeting

Defendants attempt to prove that Chaim Ostreicher "did not appear to attend" the settlement meeting on April 15, 2013 by citing to paragraph 8 of the Declaration of Holly Gerstenfeld, Esq. and paragraph 12 of the Declaration of Fred Kolikoff. *See*, Defendants' Memorandum of Law, p. 19. As explained below, neither the testimony of Ms. Gerstenfeld nor the testimony of Mr. Kolikoff cannot be credited on this issue.

### 1. Holly Gerstenfeld Admittedly Did Not Attend the April 15th Meeting

Ms. Gerstenfeld's Deceleration provides that she was the lead attorney assigned to this case but that she did not attend the April 15, 2013 settlement conference because she was attending a

funeral. Gerstenfeld Dec., ¶7. Having no firsthand knowledge of what occurred at the settlement conference, Ms. Gerstenfeld's testimony should not be credited on the discussions held at the settlement meeting. Fed. R. Evid. 602.

Similarly, Ms. Gerstenfeld's testimony as to whom she added to the security list is not indicative of who actually attended the meeting. Ms. Gerstenfeld posits that she supplied the names of "the parties <u>anticipated</u> to be in attendance were placed on the Law Department's office building's security list." Gerstenfeld Dec., ¶8 (emphasis added). In other words, the names of the people included in paragraph 8 of Ms. Gerstenfeld's declaration is not exhaustive and those people may or may not have attended. Ms. Gerstenfeld cannot and does not know.

The non-exhaustive list of people "anticipated" to attend the settlement meeting that Ms. Gerstenfeld bases her declaration on is critically flawed. Ms. Gerstenfeld relies on emails between herself and Plaintiff's prior counsel but ignores the email attached to her declaration as Exhibit 7, wherein Plaintiff's prior counsel wrote "There is a possibility that our client may wish to bring an additional person from his company..." *Id*. at p. 2. Even though Defendants' Memorandum of Law cites to Exhibit 7 to the Gerstenfeld Dec., Ms. Gerstenfeld ignores that it was contemplated that Chaim Ostreicher, another person from Ramooe Inc., would and did attend the meeting (as he testified in his Declaration). Defendants cannot rely on Ms. Gerstenfeld's advance security clearance list as evidence of who actually attended. Just as "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," Defendants should not be permitted to use conjecture and speculation to defeat the instant motion. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

It must also be noted that aside from Ms. Gerstenfeld's list being non-exhaustive and mere conjecture, the "security list" provided by Ms. Gerstenfeld simply does not make sense. There is

3

no reason why Ms. Gerstenfeld would have added her direct supervisor in the New York City Law Department, Fred Kolikoff, to a security list at his own office. *See*, Gerstenfeld Dec., ¶8; *c.f.*, Kolikoff Dec., ¶2 ("I hosted a meeting at my office on April 15, 2013..."). One would hope that Mr. Kolikoff had the proper credentials to enter into his own office without having to be placed on a pre-approved security list. Defendants are not only relying on conjecture and speculation, but are also presenting overly zealous arguments that simply do not make any logical sense.

### 2. Fred Kolikoff's Declaration Lacks Credibility

Fred Kolikoff was a supervisor at the New York City Law Department until he retired in 2015. Mr. Kolikoff's declaration attempts to describe to this Court who was in attendance at the April 15, 2013 meeting and what specifically was discussed. It is respectfully submitted that Mr. Kolikoff's recollection after six years is dubious at best. Fact of matter, Mr. Kolikiff has acknowledged the same.

Defendants submit a transcript of proceedings held on June 26, 2014 before Magistrate Judge Vera M. Scanlon as Exhibit 13 to the Gerstenfeld Dec. At such proceeding, Mr. Kolikoff testified explicitly that he did not recall the details of this case:

> Mr. Kolikoff: Honestly, your Honor, I'll be frank with you, I don't recall the details either. Normally once – the capacity of my brain is limited. Once a case is settled, the details of the case tend to slip away from me and this case, I thought was settled and done and finished. I'd have to review the file and my point is, I shouldn't have to review the file. I have a stipulation of settlement.

Transcript annexed as Exhibit 13 to the Gerstenfeld Dec., 8:13-20.

Mr. Kolikoff was adamant, just fourteen months after the April 15, 2013 settlement meeting, that he had completely blocked the instant case out of his mind. Now, over six (6) years after the April 15, 2013 settlement meeting and many years into his retirement from the New York City Law Department, Mr. Kolikoff remembers the settlement meeting like it was yesterday.

4

There is no indication that Mr. Kolikoff reviewed the file prior to making his declaration to refresh his recollection. It is simply incredulous that Defendants drafted and submitted a declaration from Mr. Kolikoff under such circumstances. This Court should not credit Mr. Kolikoff's declaration at all.

Even if this Court does consider Mr. Kolikoff's declaration, it is of note that Mr. Kolikoff declares that "*I do not recall* Plaintiff saying anything at the April 15th Meeting about Ridgewood Bushwick Senior Citizens Council, Inc... and/or United Jewish Organization of Williamsburg, Inc., [*sic*]... or that Plaintiff's interests were somehow aligned with anyone the City was contemplating to develop this project." Kolikoff Dec., ¶8 (emphasis added). It is significant that Mr. Kolikoff's failure to "recall" a discussion regarding RB and/or UJO does not mean that the topic was not discussed. Mr. Kolikoff does not deny such discussions outright. Mr. Kolikoff's failure to recall such discussion, coupled with his failure to deny that such discussions took place with any certainty and admitted lack of recall of the settlement meeting, warrants a finding that Mr. Kolikoff's declaration lacks evidentiary value.

### 3. Jack Hammer's Lack of Recollection is Insufficient

Similar to Mr. Kolikoff, Jack Hammer does "not recall" discussing UJO and RB at the April 2013 meeting. Hammer Dec., ¶6. Interestingly, Mr. Hammer provides the exact date of the meeting in his Declaration (April 15, 2013) even though at his deposition he was unsure in what year it was held and only made reference to such meeting after discussing the same with his counsel. *See,* Hammer Dep. (Exhibit H to Goldberg Dec.), 122:18-123:8.

### 4. Defendants Fail to Rebut that Defendants Knew That RB and UJO Were Significant Factors

Defendants' argue on page 20 of their Memorandum of Law that "The City attorneys had no idea that Ridgewood Bushwick or UJO's involvement in the development of the Subject

5

Property for the City was supposedly the impetus for Ramooe's agreement to settle." Quite simply, there is nothing that supports such conclusion. Holly Gerstenfeld, Esq. was not at the settlement meeting. Fred Kolikoff, Esq., who said the details of the case tend to slip away from him, does not remember such topic being discussed but did not definitively deny it was discussed. Finally, Matthew Shafit, Esq., HPD's general counsel that was allegedly at the meeting, submits no declaration.[2] Defendants' conclusory and unsupported argument that Defendants' attorneys did not know that RB and UJO were important factors for settlement should be rejected.

### B. Plaintiff Has Not Changed Its Theory

Defendants urge this Court to believe that Plaintiff has changed its theory over the years that this matter has been litigated. That is incorrect and is merely Defendants playing a game of linguistics. Plaintiff wanted to keep the Property for itself but, because RB and UJO were going to develop the Property, agreed to settle with the Defendants. It is now known that RB and UJO were not going to keep the Property and that is why the Plaintiff seeks to undo the settlement and retain the Property for itself.[3]

Plaintiff argued that the Defendants' failure to notify the Plaintiff about the Defendants' "abandonment" of the project was a critical omission that warrants the vacating of the settlement agreement. It is important to note, however, that the facts argued by Plaintiff has remained consistent. It is also important to note that the only thing that has changed is Plaintiff's references to abandonment became more targeted after Defendants disclosed the June 20, 2016 letter from former HPD Commissioner Vicki Been to RB and UJO (Exhibit J to the Goldberg Dec.).

---

[2] Although Mr. Kolikoff and Mr. Hammer recalled Mr. Shafit being present at the April 15, 2013 meeting (Kolikoff Dec., ¶3; Hammer Dec., ¶4), Mr. Shafit did not recall ever meeting with anyone outside of New York City and HPD employees regarding the subject property (Shafit Dep., 45:13-25) or being at such settlement meeting (Shafit Dep., 63:8-11).

[3] This is not, as Defendants would have this Court believe, simply a fight over valuations.

6

Defendants' argument that Plaintiff should have specifically referenced a letter drafted in 2016 about events that took place in 2013 (but not disclosed for several years) when Plaintiff first sought to vacate the settlement agreement in 2014 lacks common sense. While they are integrally connected, Plaintiff could not discuss future events before they took place.

This Court need not look further than the transcript of proceedings held before Magistrate Judge Vera Scanlon on June 26, 2014 (Exhibit 13 to the Gerstenfeld Dec. and hereinafter the "June 26, 2014 Transcript") for proof that Plaintiff's argument has remained the same. At the appearance before Judge Scanlon on June 26, 2014, counsel for Plaintiff provided various reasons why the settlement agreement should be vacated. These reasons were based on unscientific data gathered by Plaintiff that has all proven to be true through discovery.

Plaintiff argued that New York City withdrew its funding for the project. June 26, 2014 Transcript, 11:8-12. Indeed, discovery proved that HPD had in its budget to provide financing to RB and UJO. *See*, Exhibit E to the Goldberg Aff. Jack Hammer testified that rescinding site control was discussed by the Site Control Committee prior to the settlement but was never communicated to Plaintiff. Hammer Dep., 123:9-19. This funding was retroactively (and formally) rescinded by Commissioner Vicki Been in the June 20, 2016 letter (Exhibit J to Goldberg Dec.) rescinding site control.

Plaintiff further argued that the project was removed from the budget during the last year of Michael Bloomberg's term as Mayor of New York. It is noted that Michael Bloomberg's final year in office was 2013. New York State Homes & Community Renewal withdrew funding for the project by letter dated January 24, 2013. Exhibit G to the Goldberg Dec. The City soon followed. The only error that Plaintiff made at the June 26, 2014 proceedings is that Plaintiff did not argue that the State *also* withdrew funding. This was corrected in an Affidavit of Faye

7

Schwimmer (part of Exhibit 14 to the Gerstenfeld Dec.) at paragraph 5 soon thereafter. Defendants' representations that it was actively pursuing state court litigation all the while knowing that the funding to UJO and RB was not renewed is entirely consistent with Plaintiff's arguments. *Id*. In addition, an Affidavit of Martin Needelman, at paragraph 9, specifically references UJO's no-bid process for developing the properties for the local Hasidic community (of which the Ostreichers are members).

At bottom, it is not true that Plaintiff's position has changed. Defendants' attempt to retain the Property by casting aspersions on Plaintiff relies on factually incorrect arguments.

### C. The Recent Award to Developers Has No Bearing On This Dispute

Defendant attempts to prove "no harm, no foul" by pointing out that a contingent of five for-profit and not-for-profit organizations that include UJO and RB's successor were recently selected to develop within the Broadway Triangle. Defendants' argument is completely meaningless.

First, the award to the five organizations was pursuant to a new Request for Proposals ("RFP"). There was no way that Defendants knew in 2013 that RB and UJO would obtain a piece of a new project pursuant to a new RFP promulgated by New York City years after the rescission of site control from those parties.[4] As Mr. Kolikoff mocked to Plaintiff's counsel at the June 26, 2014 hearing, "Oh, you have a crystal ball now?" June 26, 2014 Transcript, 10:24.

Second, Defendants are less than forthright with this Court. When Defendants settled the State Court litigation, Defendants entered into an extensive settlement agreement annexed as Exhibit 16 to the Gerstenfeld Dec. Paragraph 2 of that settlement agreement acknowledges

---

[4] Defendants implicitly concede this fact on page 23 of is Memorandum of Law where Defendants argue that "there was still a very real possibility that they would be the developers." Emphasis added.

Plaintiff's claim to the property and specifically excludes the Property from the RFP if Plaintiff prevails. Contrary to Defendants' argument, RB and UJO do not have any rights to the Property.

Third, the role that RB and UJO are playing pursuant to the RFP is significantly diminished. Whereas RB and UJO formerly had complete control over the project and were the sole developers, RB and UJO have now been significantly subrogated to the consensus of the other organizations. Additionally, one of the developers, Mega Construction, advertises that it is "a full-service Development, General Contracting, and Construction Management firm" that offers "a broad range of services, including design phase consulting and construction coordination from inception through project completion." *See*, http://www.megagroup.nyc/about/company/ (last accessed May 24, 2019). It is clear that RB and UJO's interests will not be met in the same way today as in the past.

## CONCLUSION

For the reasons set forth herein, the Settlement Agreement between the parties should be set aside in its entirety pursuant to Fed. R. Civ. P. 60(b)(3) and (6). Plaintiff's agreement to settle for the woefully low amount of $400,000 when the Property was worth significantly more was predicated on the representations by Defendants that the Broadway Triangle redevelopment project would be continuing soon thereafter with RB and UJO at the helm. Chaim Ostreicher's Declaration makes clear that these facts were important to Plaintiff and that Defendants knew that such facts were important to Plaintiff. Defendants hid from Plaintiff that the funding was long since terminated and that UJO and RB's site control was effectively gone.

Defendants provide no cognizable argument otherwise. None of Defendants' witnesses have any memory of the settlement negotiations (and one was not even present). Notwithstanding, Defendants carefully tailored their opposition to sound as if Defendants remember the settlement

9

negotiations like they were yesterday and rely on a security list (which was not presented to this Court in any event) as if it is the Bible. This simply is not the case. Defendants' conjecture is not sufficient to defeat Plaintiff's motion. Accordingly, the Settlement Agreement should be set aside and this case should be litigated on the merits.

Dated:  New York, New York
       May 31, 2019

/s/ Steven A. Weg
GOLDBERG WEG & MARKUS PLLC
By:   Israel Goldberg
        Steven A. Weg
122 West 27th Street, 11th Floor
New York, New York 10001
(212) 697-3250

LAW OFFICE OF DOMENIC M. RECCHIA, JR.
By:   Domenic M. Recchia, Jr.
172 Gravesend Neck Road
Brooklyn, New York 11223
(718) 336-5550

*Attorneys for Plaintiff*